THE ATCHISON TOPEKA & SANTA FÉ RAILROAD COMPANY v. JOHN W. LONG.

FINDINGS, *Unsupported — New Trial.* When a jury return answers to special questions, which are essential to a recovery, but in fact unsupported by any evidence, the trial court should sustain a motion for a new trial.

*Error from Butler District Court.*

ACTION to recover damages for bodily injuries, etc. Judgment on November 8, 1888, for plaintiff, *Long,* for $500 damages. The defendant *Company* brings the case to this court. The material facts are set forth in the opinion.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*Redden & Schumacher,* for defendant in error.

Opinion by GREEN, C.: On the morning of March 4, 1888, the plaintiff below purchased a ticket at Topeka of the agent of the defendant below, as he claims, to Emporia, for which he paid $1.85, the distance being a fraction over 61 miles. He entered one of the cars in defendant's passenger train, which left Topeka some time after midnight; the car in which he took his seat as a passenger contained fifteen or twenty persons. After the train left Topeka, the collector passed through the car and took up plaintiff's ticket, but did not give him a check. As the train approached the station of Reading, the collector came along the aisle and touched the plaintiff on the knee. The train stopped at Reading and one passenger got off. After the train had started, the collector came to the plaintiff and asked him where he was going, and he answered Emporia. The collector then asked him for a ticket, or his fare to Emporia. The plaintiff replied that he had given him his ticket and paid his fare. The collector told him that his ticket read to Reading, and that he had not received a ticket to Emporia from him. The plaintiff insisted

that he had. The collector then informed the plaintiff that he would have to pay his fare to Emporia, or get off. The plaintiff said that he would not do either, unless compelled to; thereupon, the collecter left him and was gone some time, when he returned with the conductor, who asked him if he was going to pay his fare. The plaintiff said: "I have paid once, and I do not propose to pay again." The conductor then informed the plaintiff that he would have to get off. The plaintiff answered him : "I will not get off, unless I am made to get off." The conductor pulled the bell-cord and stopped the train. He then took hold of the plaintiff by the shoulder, and the plaintiff walked ahead of the conductor, collector and brakeman to the front door of the car and until he reached the steps to the platform, when he observed that the weather was quite cold and that it was snowing pretty hard. He then concluded to pay his fare. He stated that he would not get off and walked back to the door, when the conductor said : "Damn you," or "God damn you, why did you not do that before I stopped the train?" This remark was made on the platform of the car. To this interrogation, the plaintiff answered that it was his business. The plaintiff then paid the conductor 60 cents, the fare from Reading to Emporia, under protest, as he claimed, and which he characterized at the time as "highway robbery," and continued his journey to the latter place.

The plaintiff brought his action in the district court of Butler county against the defendant for expelling him from its cars in the night, and refusing him permission to ride upon its train, without paying additional and illegal charges, and placing him in the ignominious position of being put off the train of the defendant, which was filled with passengers: all to his damage in the sum of $1,000. For a second cause of action, he demanded judgment for the 60 cents extorted from him to permit him to continue his journey, and the further sum of $50 damages. A trial was had on the 18th day of October, 1888, and the jury returned a verdict in favor of

the plaintiff, for the sum of $500.60. The following are the special findings returned with the general verdict:

"1. How much was the plaintiff damaged by the acts of the defendant or its employés? A. $500.60.

"2. Do you allow anything for injury to plaintiff's feelings, and if so, how much? A. Yes, $100.

"3. Did the conductor or collector or brakeman use any violence toward the plaintiff at the time referred to? A. Yes.

"4. How much do you allow plaintiff by reason of the violence used by the conductor, collector, or brakeman? A. $50.

"5. How much do you allow plaintiff for pecuniary loss? A. 60 cents.

"6. How much do you allow plaintiff for loss of time? A. Nothing.

"7. How much do you allow plaintiff for exemplary damages? A. $150.

"8. How much do you allow plaintiff for expenses and attorney fees in prosecuting this case? A. $200.

"9. How much do you allow plaintiff for inconvenience in going from his seat to the platform of the car and back again? A. Nothing.

"10. Was it not the custom of the collector, Smith, to give a check to passengers for the large towns upon taking a ticket, and not to check passengers for the small towns like Reading? A. Yes.

"11. Did plaintiff receive a check from the collector for the town of Emporia? A. No.

"12. Did not the collector and conductor act in good faith, and with an honest belief that the plaintiff had not paid his fare from Reading to Emporia? A. No.

"13. Did the conductor and collector, or either of them, act in a wanton manner toward the plaintiff, and if yes, state how? A. Yes, the collector by not showing him the ticket, if it was for Reading and not Emporia, and convincing him of that fact; and the conductor by forcibly putting him out of the car without investigating the case."

It is contended by the plaintiff in error that the third special finding of the jury is wholly unsupported by the evidence and is untrue. The evidence of the plaintiff himself shows very clearly that no violence was used. Regarding this matter, he testified as follows:

"Ques. Who took hold of you? Ans. The conductor.

"Q. What did he say when he took hold of you? A. He said 'You will have to get off.'

"Q. You say he spoke in an ordinary tone? A. He did not speak very loud.

"Q. And you went along to the door? A. Yes, sir.

"Q. You did not resist? A. No, sir.

"Q. You did not struggle any? A. No sir, I did not.

"Q. Made no struggle? A. No, sir.

"Q. He did not use any violence in getting you to the door? A. No, sir; no great violence.

"Q. When you were out on the platform, he did not use any violence? A. No, sir.

"Q. You stepped down on the steps? A. Yes, sir.

"Q. They did not push you off, nor attempt to push you off? A. No, sir. . . .

"Q. Were you angry? A. I was a little angry, but I kept my temper.

"Q. You kept cool? A. Yes, sir.

"Q. Did the collector say anything to you other than you have told the jury? A. No, sir, he didn't. He was very mild, sir, the collector was.

"Q. Was the brakeman there? A. Yes, sir.

"Q. What did he say, if anything? A. I don't think he opened his mouth. . . .

"Q. They did not strike you? A. No, sir.

"Q. Nor push you? A. No, sir; only just pushed me a little ahead. I can tell you there was no violence used at all by the conductor—I don't claim any violence—I did not give them a chance. I knew if I did resist there would be violence.

"Q. You did not resist, and hence there was not any. A. No, sir; I did not resist."

We think, too, special findings 12 and 13 are unsupported by the evidence in this case. The collector seemed to have acted in good faith and upon the honest belief that the ticket he received was to Reading. He stated that it read to Reading. The passenger, it seems, had not examined it, and did not know whether it read to Emporia, or not. Each party, we think, acted upon his honest belief and conviction: the passenger that he had purchased a ticket to Emporia, because he had called for and paid the price demanded by the agent of the railroad company for a ticket to the latter place; the col-

lector acted upon his judgment that the ticket he received from the passenger was to Reading, for the reason that it "read to Reading." What then was the duty of the collector, under the circumstances? Should he have relied upon the statement of the passenger or been governed by the ticket? The latter rule has been adopted by the greater weight of authorities, and has been recognized by this court in the case of *A. T. & S. F. Rld. Co. v. Gantz,* 38 Kas. 608. In *Frederick v. M. H. & O. Rld. Co.,* 37 Mich. 346, Marston, J., said:

"There is but one rule which can safely be tolerated with any decent regard to the rights of railroad companies and passengers generally. As between the conductor and passenger, and the right of the latter to travel, the ticket produced must be conclusive evidence, and he must produce it when called upon, as the evidence of his right to the seat he claims."

The collector acted upon this rule, and, from the evidence of the plaintiff himself, it does not appear that any violence was used by the train-men.

The special findings of the jury numbered 3, 12 and 13 being unsupported by any evidence, it is recommended that the judgment be reversed, and the cause remanded to the district court with instructions to grant a new trial.

By the Court: It is so ordered.

All the Justices concurring.