RAILROAD v. TURNER.

(*Nashville.*     January 7, 1898.)

1. RAILROADS.  *Regulation of business.*

Doctrine re-affirmed that railroad companies may adopt, and in a lawful and proper manner enforce, reasonable rules and regulations, not in contravention of any law or public policy, for the carriage of freight and passengers and the transaction of their business generally.  (*Post, pp. 217, 218.*)

Cases cited and approved: Summit v. State, 8 Lea, 413; Lane v. Railroad, 5 Lea, 126; Railroad v. Garrett, 8 Lea, 438; Railroad v. Fleming, 14 Lea, 129; Railroad v. Benson, 85 Tenn., 627; Railroad v. Harris, 9 Lea, 180; Railroad v. Guinan, 11 Lea, 98; Trotlinger v. Railroad, 11 Lea, 533; Railroad v. Wells, 85 Tenn., 613.

2. SAME.  *Reasonableness of rules determined by the court.*

Whether a rule or regulation adopted by a railroad company is reasonable or not is a question for the court.  (*Post, pp. 218, 219.*)

Case cited and approved: Railroad v. Fleming, 14 Lea, 128.

3. SAME.  *Notice of rules and regulations.*

The rules and regulations which a railroad company may adopt and enforce in the transaction of its business do not become effective until the public or the party to be affected thereby has actual knowledge thereof, or such reasonable notice that the law will, under the particular circumstances, infer knowledge.  (*Post, pp. 219, 220.*)

Case cited: Trotlinger v. Railroad, 11 Lea, 533.

4. SAME.  *Conditions and limitations printed or stamped on ticket.*

Time limitations and conditions stamped or printed upon the back or face of a general ticket are not binding upon a passenger unless his attention is called to them when or before he purchases the ticket and he assents thereto.  (*Post, pp. 221, 222.*)

Cases cited: 23 L. R. A., 746; 32 Am. Dec., 505; 8 Am. Dec., 545.

Railroad *v.* Turner.

5. SAME. *Right of purchaser of general ticket.*

The purchaser of a general ticket, who pays the customary price therefor, is entitled to one passage, unlimited as to time, upon any train which, under the proper and usual schedules of the road, stops at the point of his destination. His right cannot be abridged by printing or stamping limitations or conditions upon his ticket, or otherwise than by express contract based upon a consideration or by voluntary waiver. (*Post, pp. 222–225.*)

Cases cited and approved: Railroad *v.* Gilbert, 88 Tenn., 430; 16 Wall., 330; 6 How., 344; 8 Am. Rep., 545; 32 Am. Dec., 505.

6. VERDICT. *Excessive.*

A verdict is set aside as excessive which awards a passenger $300 who was wrongfully, but without rudeness, ejected from a train, within eight miles of his destination, on account of the supposed invalidity of his ticket—it appearing that he reached his destination without special inconvenience or expense a few hours later. (*Post, pp. 225. 226.*)

Cases cited: Railroad *v.* Guinan, 11 Lea, 101; Railroad *v.* Fleming, 14 Lea, 152.

---

FROM MONTGOMERY.

---

Appeal in error from Circuit Court of Montgomery County. M. D. SMALLMAN, J., sitting by interchange.

BURNEY & BAILEY for Railroad Company.

DANIEL & DANIEL for Turner.

WILKES, J. This is an action for damages for unlawfully ejecting the plaintiff, Turner, from one of the passenger cars of the Louisville & Nashville Railroad Company. It was commenced before a Justice of the Peace, and, on appeal, was tried before

the Court and a jury, and judgment rendered for the plaintiff for $300 and costs, and the railroad company has appealed and assigned errors. The facts are that plaintiff bought what is called a local ticket at Guthrie, Kentucky, for Clarksville, Tennessee. Upon its face was stamped or printed the words, "Good for one continuous passage beginning on date of sale only." And the date of sale, June 14, 1897, was stamped on its back. Plaintiff did not use or attempt to use the ticket upon the day of sale, being unexpectedly detained at Guthrie on business. On the next day he tendered the ticket for passage to Clarksville. The conductor took the ticket in his hand and punched it and handed it back to plaintiff with the remark that he could not ride upon it; that the rule of the company was that such ticket was good only on the day of sale, and that he would have to pay fare or get off the train. Plaintiff replied that he had bought the ticket and paid full price for it and was entitled to ride upon it, and had no notice of such rule; that he had no money to pay his fare, and would not willingly leave the train, but would have to be put off. At the next station, the conductor took him by the arm and led him through the car, and put him off without any actual force or rudeness. He walked down the railroad three or four miles, and finding a conveyance going to Clarksville, went in it, reaching that city, without further cost, about 4 o'clock P.M., when by the train he would have

reached there at 11 A.M. of the same day. Plaintiff states that he had no knowledge of the regulation of the road that a ticket must be used on the date of its sale, and had previously ridden upon tickets on days subsequent to the day of sale. It appears that about January 1, 1897, the railroad company had put this rule in force, and had posted notices of it in its various waiting rooms, and, among others, one was posted near the ticket window at Guthrie. This notice was as follows:

"*Louisville & Nashville Railroad Company—Notice.* —On and after January 1, 1897, local tickets sold by this company, except commutation and mileage tickets, will be void if not used for continuous passage through to destination, beginning on date of sale. Any ticket which cannot be thus used will be redeemed from the original purchaser if sent to the general passenger agent at Louisville, Ky., with satisfactory explanation of the cause which prevented its use." Signed by the traffic manager and general passenger agent.

This notice was thus posted continuously from the date it went into effect, about January 1, 1897, up to the date of trial, and all local tickets sold after January 1, 1897, had stamped or printed on their face the provision above stated, "Good for one continuous passage, beginning on date of sale only."

It is not shown that any special damage was done the plaintiff, beyond the indignity of ejecting him from the train and the inconvenience to which

he was put on his journey.   Many errors are as-
signed, but we will not treat them *seriatim.*   The
Court charged the jury, in substance, that such a
regulation and limitation in regard to tickets as the
one in controversy, would not be binding on a pur-
chaser unless the contents and conditions were made
known to him when he bought the ticket, or it be
shown otherwise that he knew of them and pur-
chased the ticket with that knowledge; that, in order
to charge him with notice, it must be shown that
he actually knew of them and consented to them,
and the railroad company would be liable if he
bought a ticket without such actual knowledge, and
attempted to use it and was ejected from the train;
that the fact that the notice was posted up in the
waiting-room, near the ticket window, and that the
limiting words were stamped or printed on the face
of the ticket, would not affect a purchaser with
notice if he bought the ticket in the usual way and
paid the usual price for it, and if ejected for the
refusal to pay fare while tendering such ticket, the
road would be liable.

This holding and ruling of the Court is assigned
as error, and it is also assigned as error that there
is no evidence to support the verdict, and that the
damages are excessive.

It is held by this Court that a railroad company
may make, and by its agents enforce, reasonable
rules and regulations for the carriage of freight and
passengers and the transaction of its business gen-

erally. *Summit* v. *State*, 8 Lea, 413; *Lane* v. *Railroad*, 5 Lea, 126; *Railroad* v. *Garrett*, 8 Lea, 438; *Railroad* v. *Fleming*, 14 Lea, 129; *Railroad* v. *Benson*, 1 Pickle, 627.

As to whether a rule is reasonable or not is a question for the Court. *R. R. Co.* v. *Fleming*, 14 Lea, 128. But such rules and regulations must be reasonable in their requirements, and must be executed in a reasonable and proper manner, so as not to be unnecessarily burdensome to the public. Such rules must not contravene any law or principle of sound public policy, and they must accord with the proper service and conduct of a railroad in its business and duty as a common carrier. The liability of the road cannot be restricted by such rules and regulations, nor can they be so shaped or enforced as unnecessarily to annoy and restrict the traveling public in its rights. 5 Am. & Eng. Enc. L. (2d Ed.), 482, and notes. Thus in *Lane* v. *R. R.*, 5 Lea, 124, it was held that a railroad company has the right to make regulations requiring passengers to purchase tickets before entering upon a freight train, and authorizing conductors to expel persons not having tickets, though they offer money in payment of fare. In *Summit* v. *State*, 8 Lea, 413, it is held that a railroad may make all necessary reasonable rules for the proper and orderly management of its depots and other places open to the public, but not in such way as to infringe upon the rights of the public. A railroad may also make a rule that coupons

from tickets shall be detached only by the conductor, and not by the passenger, and enforce such rule in a reasonable manner. *Railroad Co.* v. *Harris*, 9 Lea, 180. So a railroad may, by regulation, establish a higher rate of fare if paid on the cars than in the case of a ticket purchased before going on the train. *Railroad* v. *Guinan*, 11 Lea, 98. It may also regulate the running of its trains and the stopping of through trains at principal points only, and require passengers who are destined to way stations to ride upon such trains only as under the schedules stop at such stations. *Trotlinger* v. *The E. T., V. & Ga. R. R.*, 11 Lea, 533. It may also require a person, on entering a train for purposes of travel, to exhibit his ticket on entering and afterwards to surrender it when called upon by the conductor. *Railroad Co.* v. *Fleming*, 14 Lea, 129. It may also prescribe in what cars passengers may ride, provided equal and proper accommodations are furnished alike to all passengers holding first-class tickets, as that cars may be set apart for ladies when alone or accompanied by gentlemen traveling with them, and different cars for colored and white people shall be furnished, under the statute. *Railroad Co.* v. *Benson*, 1 Pickle, 627; *Railroad Co.* v. *Wells*, 1 Pickle, 613. Such rules and regulations, in order to be effective, must be made known to the public in such way and by such means as in the special case may be necessary and best adapted to serve the convenience and purpose of the passenger as well as of the railroad.

As to what notice or publication of rules is required or sufficient, in order to reach and affect the public, the authorities are by no means agreed. From the very nature of the case, much must depend upon the provisions of the rule, and whether it is one intended to affect the entire public and the usual and general business of passenger traffic or one intended for certain trains and certain circumstances and individuals only. To illustrate, a person desiring to ride upon a freight train, or a through train when his destination is a way station, would reasonably expect regulations different from those affecting travel generally, and would be put on his guard to ascertain the rules by which his passage must be governed, when he would have no occasion to suspect such rules to apply to his passage upon the trains of the road generally. A rule relating to the former might be reasonable, which would not in the latter case, and notice might be sufficient in the former which would not be in the latter.

So, in *Lane* v. *Railroad*, 5 Lea, 124, it was held that when a railroad company has been in the habit of permitting persons to ride upon its freight trains without the purchase of tickets, it must inform persons personally that its rule has been changed so as to require tickets, if such is the case, until such time as will suffice to acquaint the public with the existence of such rule.

So, in *Trotlinger* v. *Railroad*, 11 Lea, 533, it was held that a passenger holding a ticket to a way

Railroad *v.* Turner.

station had no right to ride upon a through train which did not stop at such station, provided he had notice of such schedule regulations, and it was suggested that if such publicity had been given in the ticket office and on the cars by posters that a party of ordinary intelligence, by the use of ordinary care and caution, could or might obtain all requisite information as to the matters involved, then the passenger would be bound · by such regulations. Citing 2 Wait's · Actions and Defenses, 67, and cases there collated, for authority for the latter proposition as to publication and notice.

These regulations in regard to riding on freight trains, and on trains only that stop at certain stations and do not stop at others, have been held to be reasonable regulations, but they apply to only exceptional cases, and not to the general traveling public in passing over the road from one station to another. Such special cases may be regulated by rules, and such rules may very properly be brought to the knowledge of the traveling public by notices of publication, but a rule and notice which is intended to apply to all passengers, and to affect all travel and every individual who applies for passage, stands upon a different basis and requires more direct notice. A notice which is intended to apply to the entire public should be such as to leave no doubt but that it reaches all who are to be affected by it.

While there is a conflict in the cases, the weight of authority is that time limitations, or conditions

stamped or printed upon the back or face of a general ticket, are not binding upon a passenger unless his attention is called to them when he purchases the ticket and he assents thereto. *Potter* v. *The Majestic*, 23 L. R. A., 746, and note; Ray's Negligence of Imposed Duties of Passenger Carriers, 514, 518; 4 Elliott on Railroads, Sec. 1593, note; *Cole* v. *Goodwin*, 32 Am. Dec., 505, and notes; *Rawson* v. *Penn. Railroad Co.*, 8 Am. Dec., 545.

While there may be some uncertainty, and even conflict, in the authorities, we are of the opinion that the correct rule is that a person who purchases a general ticket, and pays the usual price therefor, is entitled to one passage, unlimited as to time, upon any train which, under the proper and usual schedules of the road, stops at the point of the passenger's destination. If a ticket, limited or conditional, is sold to a passenger, it can only be done upon an express agreement with him, either oral or in writing, and either based upon a consideration, or with the alternative presented to the passenger of a full and unlimited ticket. A similar rule obtains in regard to contracts for carriage of freight, and it has been held by this Court that a carrier must hold itself in readiness to ship with common law liability, and must offer to shippers a reasonable and *bona fide* alternative between that mode of shipment and one with restricted or limited liability. *Railroad* v. *Gilbert, Parkes & Co.*, 4 Pickle, 430.

So, in *Michigan Central Railroad* v. *Mineral*

*Springs · Mfg. Co.*, 16 Wall., 330 (Book 21, L. Co-op. Ed., 302), it is said: "Nothing short of an express stipulation, by parol or in writing, will be permitted to discharge a carrier from the duties which the law has annexed to his employment, . . . and such agreement is not to be implied or inferred from a general notice to the public limiting the obligation of the carrier, which may, or may not, be assented to." See, also, *Nav. Co.* v. *Black*, 6 How., 344.

We are also of opinion that the mere stamping or printing of a limitation or condition upon the back or face of a ticket, and the acceptance of such ticket by a passenger, without more, is not sufficient to bind him to such condition or limitation, in the absence of actual notice to him of such condition or limitation and his assent thereto when he purchases his ticket. It cannot be presumed that every person buying a railroad ticket, for ordinary and general use, will, in the hurry and bustle of travel, stop to read and critically inspect his ticket. As a matter of fact, but little opportunity is afforded him to do so. He generally takes his place in the crowd at the ticket window, produces and hands over his money with a request for a ticket to destination. His money is received. The ticket is produced, and, after being stamped, is handed to him through the ticket window. He has had no opportunity to see what is upon it, and has no time, in the rush, to stop and read and consider what may be printed or

stamped on its face or back, and when he has paid
full fare there is no occasion for his doing so, in-
asmuch as he can safely rely upon the contract which
the law makes for him.    Ordinary local tickets do
not generally contain any terms of contract, and are
not intended to do so.    They are mere tokens to
the passenger and vouchers for the conductor, adopted
for convenience to show that the passenger has paid
his fare from one place to another, very much in
the nature of baggage checks.    The contract is in
fact made when the ticket is purchased, and if it
is different from what the law would imply, it must
be so stated and assented to when the ticket is de-
livered.    Nor will the posting of notices in the
waiting rooms, ticket offices, and on the cars affect
purchasers with notice in such cases.    Passengers
have but little time or opportunity to read such
placards, and it would impose quite a serious burden
upon travel to hold that the public must read all
these notices thus posted, before taking passage on
a train upon which they are willing to, and do, pay
full fare.    *Rawson* v. *Penn. R. R. Co.,* 8 Am.
Rep., 545; *Cole* v. *Goodwin,* 32 Am. Dec., 505,
and note; Ray Passenger Carriers, Sec. 145; Hutch-
inson on Carriers, Secs. 246, 580, 581; 4 Elliott
on Railways, Sec. 1593.

This rule, which we consider to be settled by the
weight of authority and by reason, by no means
prevents a railroad company from selling special
tickets for special trains with limitations and condi-

tions, such as excursion, round-trip, commutation, and mileage tickets, when the conditions and limitations are known to the purchaser and assented to by him orally or in writing, and he has paid for such ticket less than the usual fare. When tickets are sold at reduced rates, it has been very wisely said that the purchaser should, in consideration of such reduced fare or greater privileges, expect and look for some conditions, limitations, and terms different from those attaching to tickets generally, and be on his guard to become informed of them. But there is no such obligation upon the ordinary passenger, who pays the usual or full fare and asks for no reduced rates or special privileges, and he has a right to expect an unlimited ticket. Under this view of the law, there is ample evidence to support the verdict in this case, and the only question remaining is, Are the damages of $30.0 excessive? We do not find from the record any evidence of rudeness on the part of the conductor. The plaintiff declined to leave the car after the whole matter was explained to him, and notified the conductor he would have to put him off. While the record shows that plaintiff had no money to pay his fare, it fails to show that he made any effort to obtain it from any of his fellow - passengers. The conductor led 'him through the train and put him off at the front end, but it does not appear that this was unusual, or done with any purpose to humiliate the passenger. It was attempted to be shown that the conductor made some

16 P—15

remark after he had put the passenger off, but this was properly excluded by the Court. The plaintiff was subjected to no pecuniary loss, was put off at a station not more than eight miles from his destination, and reached there a few hours later without any additional outlay of money. We think, under these circumstances, the question of his right to ride being, at least, doubtful, and the conductor being in the plain discharge of his duty to the road, and performing it in a reasonable manner, it does not present a case of malice and oppression on the part of the railroad which should be punished with excessive damages. The true rule in such cases is laid down in *Railroad* v. *Guinan*, 11 Lea, 101–106, and in *Railroad* v. *Fleming*, 14 Lea, 152.

For this latter reason we reverse the judgment of the Court below, and remand the cause for another trial. Appellee will pay costs of appeal.