ALDACE F. WALKER et al., Receivers of The Atchison, Topeka & Santa Fe Railroad Company, v. LENA PRICE et al.

**No. 697.*  (59 Pac. 1102.)**

RAILROADS— *Unlimited Ticket—Rights of Passenger.*. A railroad ticket, containing provisions respecting time limitation, nontransferability, etc., and an unsigned space for the signature of the purchaser, is *prima facie* unlimited, notwithstanding the presence of punch-marks in the margin indicating a time limitation; and such punch-marks in the margin should be disregarded by the conductor of a train operated by the selling company where such ticket is presented, after the time limit so indicated has expired, by a passenger who claims, in apparent good faith, to have purchased it as an unlimited ticket and to have had no previous knowledge of a purported limitation.

Error from Sedgwick district court; D. M. DALE, judge. Opinion filed February 19, 1900.   Affirmed.

*A. A. Hurd*, for plaintiffs in error.

*J. D. Houston*, for defendants in error.

The opinion of the court was delivered by

MILTON, J. : This action was brought by Lena Price, one of the defendants in error, against the Atchison, Topeka & Santa Fe Railroad Company, and the plaintiffs in error as receivers of that company, to recover damages for the alleged wrongful ejection of the plaintiff from a passenger-train of the defendants by the defendants' agent, the conductor of the train, and the consequent impairment of the plaintiff's health by reason of the shock and worry thereby occasioned. The petition alleged that on the 27th day of May, 1894, near the village of Derby, a station on the said

---

* Ordered certified to supreme court April 6, 1900, and there pending.— REP.

railroad in the county of Sedgwick, this state, and while plaintiff was rightfully on one of defendants' trains as a passenger for hire, and while she was entitled to be carried by the defendants on said train as such passenger from Wichita, Kan., to Woodward, I. T., she was compelled by the conductor of the train to leave the same, and was by him wrongfully ejected from said car and train in the presence of relatives, friends, and other passengers; that she was then in delicate health, and frail in mind and body, which fact the defendants and their agents well knew; and that by reason of said wrongful ejection the plaintiff's health in body and mind was greatly and permanently impaired, all to her damage in the sum of $7000.

The defendants filed separate answers, each containing a general denial of the allegations of the petition. The jury returned a verdict in favor of the plaintiff against both the railroad company and the receivers for $1000. The railroad company's motion for a new trial was granted and that of the receivers overruled. Judgment was thereupon rendered against the receivers in accordance with the verdict.

From the record it appears that in April, 1894, the plaintiff, a young woman about twenty years of age, was residing with her parents at Woodward, I. T. She was suffering from nervous and other troubles, and it was decided that, accompanied by her mother, she should go to Wichita, Kan., for medical treatment. The length of their stay in Wichita was necessarily uncertain. On April 25, the plaintiff's brother, Frank Price, purchased tickets for the plaintiff and her mother from the agent of the receivers at Woodward, good for passage from that place to Wichita and return. The tickets were in two connected parts, one

part to be used in going and the other in returning. The only testimony concerning the purchase of the tickets was that of Frank Price, who testified as follows :

" Ques. State what occurred at the purchase, and manner of purchase. Ans. I asked the ticket agent at Woodward what two tickets would cost from there to Wichita and return.

" Q. What did he say? A. He went and looked and came back and says, ' I could sell you a limited ticket for so much '— I forget the amount. I told him I did n't want a limited ticket, and he told me what an unlimited ticket would cost — first-class ticket. I told him I would take that, and paid the price asked for it — about all there was of it.

" Q. You handed them to your mother and sister? A. Yes, sir.

." Q. That is all you know about the matter. A. Yes, sir."

He further testified that he did not notice the face of the tickets, except to see that one part read from Woodward to Wichita and the other part from Wichita to Woodward ; and that he did not see the agent punch the tickets nor observe the punch marks. The return portion of plaintiff's ticket, which was the only part introduced in evidence, is shown on next page.

The plaintiff testified that because of her illness she was not able to read her ticket when it was delivered to her, and that she did not at any time read it or become acquainted with its provisions. She did not sign the contract thereon, nor was she asked to do so. Under the treatment of her physician the plaintiff's condition was much improved, and on the morning of May 27 she and her mother walked some seven or eight blocks to the depot of the defendants to take passage on an early train for their home in Woodward. On production of one of the tickets their trunk

Railroad Co. v. Price.

| | ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY. RETURN-TRIP COUPON. | 1893 |
|---|---|---|
| I agree to conditions named. *Purchaser.* | Good for one first-class passage unless otherwise indorsed. WICHITA TO WOODWARD, I. T. | O |
| | When stamped by Company's agent and subject to the following contract: | 1895 |
| | In consideration of the reduced rate at which this ticket is sold, it is hereby agreed that it will not be good for going passage after midnight of the date named in attached coupon, nor for return passage after midnight of date punched in margin hereof, and that it is strictly non-transferable.  Conductors | 1896 |
| | will take it up and collect full fare if presented by other than the person whose signature is herein, or if more than one date is canceled, or if it shows alteration. | 1897 |
| | Form —.                        GEO. T. NICHOLSON, Local 3.        *General Passenger and Ticket Agent.* Series 13. | 1898 |

| | Jan | Feb | Mar | Apr | O | June | July | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10453 | Day: 1 | 2 | 3 | 4 | O | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| | 31 | 30 | 29 | 28 | 27 | 26 | 25 | 24 | 23 | 22 | 21 | 20 | 19 | 18 | 17 |

"The S. K. Ry. Co.

Stamped on back :        Apr. 25, 1894.

Woodward, I. T."

was checked to Woodward, and was carried on the train which the plaintiff and her mother entered for their return passage.  Shortly after leaving Wichita the tickets were handed to the conductor of the train. He promptly informed the plaintiff and her mother that the tickets had expired and could not be used for transportation on that train.  The mother then stated to the conductor the reason for their visit to Wichita; how long they had stayed there in order that the plaintiff might have medical treatment; that the ticket agent at the defendants' depot in Wichita had just told them their tickets were good; and the fact of the checking of their trunk.  The conductor told them that if they had been detained on account of the plaintiff's sickness, the tickets would be extended and made good for the return trip, if they would present them to Mr. Murdock, the general agent of the railroad company at Wichita; and he advised that they get off at the first station, Derby, ten miles from

Wichita, and return to the latter place on the train which would pass through Derby at ten o'clock that morning. The plaintiff testified that they requested the conductor to carry them to Wellington, and that her mother offered to pay all the money she had, which was less than the regular fare for the two to that point, but that the conductor declined to do so and stopped the train at Derby, telling them they must get off there. She also testified: ''He took me by the arm and put me off the train.''

On the part of the defendants, the testimony was that she was taken by the arm simply to assist her in passing from the car steps to the platform. The jury stated in one finding that the plaintiff left the car at Derby on account of '' forcible persuasion,'' and in another that she did not leave the car willingly. After being left at Derby, the plaintiff's mother telegraphed her husband at Woodward, and arrangements were thereupon made by wire for tickets from Derby to Woodward. They left Derby on the first south-bound passenger-train, and were obliged to remain in Wellington over night, to get a train for Woodward, where they arrived the following day, having been delayed twenty-four hours altogether. It does not appear to be disputed that the plaintiff was made seriously ill by the excitement incident to her removal from the train, and that such illness continued for several months. The mother of the plaintiff died prior to the trial of this action. The jury found that the plaintiff's brother did not advise her of the conversation with the agent at Woodward concerning the tickets, and did not tell her that the tickets were unlimited; that the conductor honestly believed the plaintiff's ticket had expired prior to its presentation to him; and that when the plaintiff and her mother

left the train at Derby the conductor was " honestly laboring under the impression that the plaintiff was simply following his suggestion that she go back to Wichita and have her ticket extended." The plaintiff, however, testified that she at no time had such intention. The jury also found that the plaintiff's brother did not buy a limited ticket.

The learned counsel for the plaintiff in error contends that the trial court erred in permitting the witness Frank Price to testify as to the conversation between himself and the ticket agent at Woodward at the time the tickets were purchased. Counsel says :

"The cause of action alleged in plaintiff's petition is the unlawful ejectment from the cars of the defendant at the time when she was *rightfully* a passenger thereon and entitled to ride to her destination. There is not one word in the petition directly or indirectly tending to show any claim for damages on account of any breach of the company's obligation to furnish unlimited tickets upon request, or for any breach of contract for carriage at the time the limited ticket upon which plaintiff was riding was purchased. Therefore, the testimony was not material to any issue raised by the pleadings in the case and should not have been admitted by the court."

Attention is also called to the fact that at the time the plaintiff was required to leave the train at Derby she had no knowledge concerning the conversation between her brother and the ticket agent at Woodward respecting the ticket. It is also contended that the court erred in overruling the defendants' demurrer to the plaintiff's evidence, since nothing therein tended to show that the plaintiff was in such condition as to render it inadvisable or unsafe for her to leave the train at Derby and return to Wichita. Counsel says that the plaintiff's evidence showed no negligence of any kind or description in connection with her leaving the

train at Derby. We think the testimony of plaintiff's brother was clearly material. Under the circumstances surrounding the plaintiff when the visit to Wichita was decided upon, it is evident that a ticket limited to ten days for the return trip would in all probability have been useless to her. It was impossible for one in her position to determine with exactitude the length of time medical treatment would be required. It is therefore unreasonable to suppose that the purchase of limited tickets would have been contemplated by the plaintiff or her brother. The contract which she intended to make and which she actually did make in the purchase of the tickets was the only one which could prove beneficial to the plaintiff in view of her condition and requirements. The testimony as to what was said and done at the time of the purchase of the tickets was an essential ingredient of the plaintiff's case. The competency of the testimony is further apparent in view of the fact that the plaintiff did not sign the contract on the face of the ticket whereby the limitation of time for the return passage as indicated by the punch marks would have become operative. Like all other contracts, the concurrence of the parties thereto was essential to its formation. The punch marks alone could not create a limitation. The plaintiff had no knowledge that the ticket was anywise a limited one until the conductor so informed her. She had used the going portion of the ticket more than thirty days before her attention was called to the alleged limitation contained in the return portion thereof. The burden of proof of the knowledge of a passenger of a memorandum on his ticket limiting the liability of the company, and of his assent to it, rests on the company. (*Railroad Company v. Harris*, 12 Wall. 65, 20 L. Ed. 354.) In the case of

Railroad Co. v. Price.

*Railroad v. Turner*, 100 Tenn. 213, 47 S. W. 223, 225, the court said :

" While there is a conflict in the cases, the weight of authority is that time limitations, or conditions stamped or printed upon the back or face of a general ticket, are not binding upon a passenger unless his attention is called to them when he purchases the ticket and he assents thereto."

Mere acceptance of the ticket in the present case did not create a contract limiting its time to run.    Referring to the effect of the acceptance of a ticket containing conditions and limitations, the New York court of appeals, in *Rawson v. Pennsylvania Railroad Co.*, 48 N. Y. 212, 217, said :

"The contract between these parties was made when the plaintiff bought her ticket, and the rights and duties of the parties were then determined.    Hence, even if the plaintiff had read what appears upon her ticket after she had entered upon her journey, it would have made no difference with her rights.    She was not then obliged to submit to a contract which she never made, or leave the train and demand her baggage."

To the same effect is the decision in the case of *Kent v. Railroad Co.*, 45 Ohio St. 284, 12 N. E. 800, where it is said :

" It is well settled that the purchaser of a railroad ticket does not, by its mere acceptance, acquiesce in, and bind himself to, all the terms and conditions printed thereon in the absence of actual knowledge of them" (citing numerous authorities).    See, also, *Boyd v. Spencer*, 103 Ga. 828, 30 S. E. 841.

In keeping with the foregoing decisions, and a controlling authority in the present case, is the decision in *K. C. St. J. & C. B. Rld. Co. v. Rodebaugh*, 38 Kan. 45, 15 Pac. 902, where the ticket contained a special limitation as to the liability of the railroad company

in case of loss of baggage checked by virtue of pur-chase of the ticket.   The court said :

"In this case there was no contract on the part of the plaintiff, and no knowledge was conveyed to her of any intention on the part of the defendant to limit its liability save and except what the ticket itself contained, and this was not read or its contents made known to the plaintiff.   Can this be called an implied contract?   We think that, before the plaintiff can be bound by the declarations in the ticket for transportation on a passenger-train, the restrictions or limitations sought to be made must be known to her, and she must have accepted the ticket with full knowledge of the restrictions contained therein.   This ticket contained a blank for the signature of the purchaser, and that signature was to be witnessed by some one.   This was not done in this case.   The object of that blank space being left there was, doubtless, that the attention of a purchaser might be called to the conditions of the ticket, and when called to sign it he would then know its contents.   This would constitute a contract between them, but without it there would be no contract and no restriction or limitation of the liability of the company."

Counsel for plaintiff in error assumes as a premise that the act of the conductor in putting the plaintiff off the train was rightful and proper, in view of his duty to his employer and of the terms of the ticket itself.   The case of *A. T. & S. F. Rld. Co. v. Long*, 46 Kan. 260, 26 Pac. 682, is cited as supporting the proposition that, as between the conductor and a passenger, the ticket produced by the latter is the only evidence which the conductor can regard in determining the right of the passenger to the seat he claims, and that it is conclusive evidence as to such right.   We think it not in conflict with that decision to hold that in the present case the conductor went beyond the requirements of his position and the permission of the law in

Railroad Co. v. Price.

expelling the plaintiff from the train. She held an unused ticket, for which the price demanded by the defendants for an unlimited ticket had been paid by her agent, and no contract appeared on the ticket showing it to be limited. The burden of proof as to plaintiff's knowledge of and assent to the time limitation indicated by the punch marks on the margin of the ticket being upon the defendants, it was the duty of their agent, the conductor, to interpret the ticket in favor of the plaintiff, whose representations to him showed her to be acting in good faith. Under the circumstances, it might have been difficult for the conductor to decide as to which of two possible mistakes the agent selling the ticket had made, namely, whether in undertaking to sell a limited ticket he had neglected to have the contract form thereon signed by the purchaser, or whether he had negligently punched an unlimited ticket; but such decision did not concern the plaintiff's rights in the premises. The punch marks, in the absence of the plaintiff's signature on the ticket, should have been disregarded, for the reason that the contract for the transportation of the plaintiff, as evidenced by the ticket, having been made at the time of its purchase, the ticket without her signature was *prima facie* unlimited. Holding the ticket to be unlimited is carrying out the contract made between the parties, while holding it to be limited is creating a new contract. In our opinion the defendant receivers were clearly liable in damages for the injuries resulting to the plaintiff from her expulsion from the train. It is an action sounding in tort. (*Carsten v. Northern Pacific Ry. Co.*, 44 Minn. 454, 47 N. W. 49 ; *Georgia Railroad and Banking Co. v. Dougherty*, 86 Ga. 744, 12 S. E. 747.)

It does not appear that the amount of damages

awarded by the jury was excessive. Having decided to rest our conclusion upon the basis hereinbefore stated, we deem it unnecessary to discuss the other important questions which are presented by counsel for both parties. Each assignment of error has received careful attention, but we have found nothing requiring a reversal of the judgment. It will therefore be affirmed.