## William H. Burn, Plaintiff in Error, v. The Chicago, Burlington & Quincy Railway Company, Defendant in Error.

### Gen. No. 14,790.

1. COMMON CARRIERS—*what part of contract to carry passenger.* The statutory obligation to redeem a ticket at its full price if not used, enters into the contract of carriage made by the carrier with a passenger.

2. COMMON CARRIERS—*validity of provision requiring use of ticket upon particular day.* A notice on a ticket issued by a carrier to a passenger to the effect that it shall be used on a particular day, is proper, and such a regulation is reasonable and valid.

3. COMMON CARRIERS—*what not waiver of valid regulation printed upon ticket.* If a ticket issued to a passenger providing for its use upon the day of its date is punched by several successive conductors, but not retained, a succeeding conductor may properly refuse to accept the same upon the ground that it was being used on a day other than its date.

4. PASSENGER AND CARRIER—*when nominal damages only can be recovered upon expulsion.* Nominal damages only can be recovered for an expulsion of a passenger upon the ground of the invalidity of his ticket, if, at the time of such expulsion, he had in his possession sufficient money to pay his fare.

Action for damages. Error to the Municipal Court of Chicago; the Hon. HENRY C. BEITLER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed March 18, 1910.

**Statement by the Court.** On January 2, 1908, the plaintiff bought a ticket of defendant from Chicago to Ottawa, Illinois, for the maximum fare al-

lowed by law. Before the train started he was called away. On January 8, 1908, he resumed his journey. The conductor at Chicago punched the ticket and handed it back to plaintiff. At Aurora another conductor replaced the first one. He also punched the ticket, but later came back and on being told in answer to his inquiry that the ticket was bought January 2, said he could not accept it and demanded that plaintiff either pay his fare or get off. On his refusal, he was ejected at a station six miles beyond Aurora. He reached Ottawa that night instead of at 11 a. m. "Continuous passage within one day of date of sale" was stamped on the ticket.

The trial judge directed a verdict for defendant.

BULKLEY, GRAY & MORE, for plaintiff in error.

CHESTER M. DAWES and HERBERT HAASE, for defendant in error.

MR. JUSTICE MACK delivered the opinion of the court.

The grounds relied upon to reverse the judgment are, first, that as the ticket was sold for the maximum legal fare any limitation of the obligation to carry was void, and, second, that the company having through the acts of the first conductor accepted plaintiff as a passenger and cancelled the ticket, it had no right subsequently to eject him.

By statute of April 19, 1875, section 5, (Hurd 1908, p. 1681) the company was bound to redeem an unused ticket at its full price. This statutory obligation became a part of the contract entered into between the parties. The contract therefore was either to carry plaintiff from Chicago to Ottawa or to redeem the ticket purchased as to the whole or any unused part thereof.

Inasmuch as plaintiff paid the maximum fare, it is conceded that any limitation of defendant's liability would be void. If the ticket had read or if the printed words fairly construed could be held to mean that

unless the ticket were used as indicated, it would become a nullity for all purposes—if, in other words, defendant, by this clause, had attempted to override the statutory obligation to redeem, then plaintiff's contention that the clause in question was an attempt to impose a limitation which was void and which could therefore be disregarded, would be sound.

We cannot, however, give this interpretation to the language used. The fair construction of the words is that the specific ticket would be good only for the time fixed, not that defendant would refuse to redeem it or would refuse after redemption to issue another ticket. In no way did defendant indicate a purpose to abridge plaintiff's statutory rights. It was under no obligation, however, to give plaintiff notice of his legal right to redeem. The statute, giving the right, made no such requirement.

If then the printed clause is not an attempted limitation of liability but notice of a regulation, it must be determined, first, whether such a regulation is reasonable, and, second, whether the notice thereof was a proper one.

That such a regulation is reasonable and perhaps necessary to enable the railroad company to provide the necessary facilities to carry its prospective passengers, has been held in Elmore v. Sands, 54 N. Y. 512; Coburn v. Morgan's Louisiana & Texas R. R. Co., 105 La. 398, and numerous other cases. While the contrary conclusion is reached in L. & N. R. R. Co. v. Turner, 100 Tenn. 213; Norman v. Southern Ry. Co., 44 S. E. 83, and Dagnell v. Southern Ry. Co., 48 S. E. 97, we believe that the weight of reason as well as of authority is in favor of the reasonableness and validity of such a regulation. By it the purchaser is deprived of no right and put to no loss. The ticket bought by him, even if not used within the time, remains good for redemption purposes. The prospective passenger, if notified of the reasonable regulation, should comply therewith.

Whether a general notice posted in the waiting rooms or at the ticket office would suffice need not here be determined. The question here involved is whether printing the words on these tickets is a proper notice.

The case of Pennington v. I. C. R. R., 69 Ill. App. 628, far from supporting plaintiff on this point, leads rather to the contrary conclusion. In that case there was printed on the face of the ticket, "if presented on date of sale shown on back."

The court says, "The ticket was perforated by a stamp cutting little round holes in it, and when held up to the light with the back of the ticket to the observer, the holes were so arranged as to form the figures 331:3. Whether such figures meant anything, and, if anything, what, would be to the general run of uninstructed passengers an unsolvable riddle.

" 'Date of sale shown on back,' might be indicated to the employes of the company by any cipher of which they had the key. The restriction was not to date of sale simply, but to such date 'shown on back.' The appellant did not understand the effect of these hieroglyphics and went to the agent for guidance, who answered him by turning him to the cars."

That is, the notice was not intelligible to the average man, and therefore did not bind plaintiff. If the court had been of the opinion that an intelligible notice so given would have been void, there would have been no need to consider the character of the notice in that case.

Nor are the cases holding that a limitation of liability is not obtained by a notice on a ticket or bill of lading unless the traveler or shipper not merely saw it but expressly assented to it, in point here, for a mere regulation, unlike a limitation of liability, need not be assented to. It suffices if it be brought to the notice of the passenger. In our judgment, this is accomplished by printing the words in question on the ticket. These were not unintelligible or hidden away in fine print in a mass of regulations and limitations; they were clearly observable by the plaintiff.

But even if the statement printed on the ticket were deemed an illegal limitation, even if plaintiff on payment of his fare had been entitled to receive a ticket without such a limitation, nevertheless just as in the case of a mistake by the selling agent in handing out the wrong ticket, the only right of action against the company would be for breach of the obligation to deliver a proper ticket and the damages that result therefrom. R. R. v. Turner, 100 Tenn. 213.

This is clearly stated in Shelton v. Erie R. Co., 73 N. J. L. 558, in which case the court did hold that the company should have given plaintiff an unrestricted ticket. Nevertheless they denied him a recovery in tort for wrongful expulsion from the train. The New Jersey court said, at page 564: "These corporations possess, therefore, a dual nature, having in trust on the one hand the financial interests of their stockholders, and, on the other, the convenience and safety of the traveling public. The two agents of these corporations with which alone the public comes in contact, the ticket agent and the train conductor, represent roughly these two corporate capacities.

"Hence the transaction by which a traveler purchases a ticket from one of these agents for presentation to the other is likewise of this same dual nature, and involves an observance on the part of the passenger of all reasonable regulations established for the conduct of each of these departments. These regulations are simple, uniform and well understood by the public. The ticket agent sells tickets for cash. He cannot give credit. His authority over the business of his company is limited to the issuance of such tickets as have been placed in his hands for that purpose, as incidental to which he may hand out time tables and give such information to prospective passengers as may aid them in the selection of the tickets they require; i. e., tickets that will pay the fare between the points they designate. The obligation of the company with respect to the acts of this agent is that he shall deliver to passengers the tickets for which they ask

and pay. If this is not done, whether the fault be that of the agent or the company, this obligation is broken and the company is liable for the damages that result therefrom. The case before us is an illustration of such a breach.

"The agency of the train conductor is even more limited, for it is all comprised in his duty to collect a fare from every passenger, or to eject him from the train.

"The fare thus to be collected by the conductor may be a cash sum, or it may be a ticket; that is for the passenger to determine. If the passenger proposes to pay in cash, he must be provided with and tender to the conductor a sum that, under the established rules of the company, is sufficient to pay his fare. If he proposes to pay by ticket, he must be provided with and tender a ticket that, under the established rules of the company, has the intrinsic effect of paying such fare.

"* * * in the determination of right to travel under a railroad ticket tendered as fare conclusive force is to be given to the intrinsic effect of such ticket as expressed on its face.

" * * * that the face of a railway ticket, when it speaks upon the subject, is conclusive upon its sufficiency as a railroad fare, should be clear.

"* * * The fundamental fallacy of the contrary position is that it assumes the authority of ticket agents to make contracts for railroad companies. The authority of such agents is notoriously limited to the sale of tickets, and to the doing of acts that are ancillary thereto. By no rule of the law of agency or of evidence can the acts or statements of a ticket agent beyond the scope of his limited authority be erected into a contract binding upon the railroad company. What has been mistaken for this authority to make contracts is the ability of these agents to make trouble for their companies by their negligence in the delivery of tickets, or their mistakes in giving information. For injury resulting from these acts of the

ticket agents their principal may, as we have already seen, be held liable in an appropriate action.''

And so, too, our own Supreme Court has frequently held, even where the company was at fault and liable to some extent because of giving the wrong ticket or transfer, that a conductor might act exclusively on the evidence of the ticket presented to him; that if this ticket were not such as to authorize him under the rules of the company to receive it, he might reject it and expel the passenger who refused to pay his fare. Kiley v. C. C. Ry. Co., 189 Ill. 384.

As the court said in Pennsylvania R. R. Co. v. Connell, 112 Ill. 295, at pp. 305 and 306: ''When the conductor demanded that appellee should pay fare or leave the train, he would have been justified in refusing to pay fare, and in leaving the train on the command of the conductor, and had he done so he would have received no personal injuries, and might then have brought his action and recovered, as before stated; but when he refused to leave the train, and thus compelled the conductor to resort to force, he cannot recover for an injury which he voluntarily brought upon himself.    The conductor was ordered by his superior not to receive a ticket like the one presented. This order he was bound to obey, and so far as appears he acted in good faith, and when appellee was notified by the conductor that his ticket was not good and would not be received, it was his duty to leave the train in a peaceable manner and hold the company responsible for the consequences rather than resist or undertake to retain his place on the train by force. A train crowded with passengers—often women and children—is no place for a quarrel or a fight between a conductor and a passenger, and it would be unwise, and dangerous to the traveling public, to adopt any rule which might encourage a resort to violence on a train of cars.    The conductor must have the supervision and control of his train, and a demand on his part for fare should be obeyed, or the passenger should in a peaceable manner leave the train, and seek redress

in the courts, where he will find a complete remedy for every indignity offered, and for all damages sustained.''

The plaintiff, however, urges that even if the regulation were proper, nevertheless the waiver by the first conductor bound the company inasmuch as this was a single, not a coupon ticket, over a single, not several, lines and handed to the first conductor in payment of the trip not to Aurora, but to Ottawa, and so accepted by him. We cannot assent to this interpretation of the transaction. The first conductor, while he punched the ticket, did not retain it and issue a trip ticket in lieu thereof; he handed it back to plaintiff for further use. It was plaintiff's duty to show it or to deliver it up to any subsequent conductor. The second conductor had exactly the same right to rely exclusively upon the evidence of the ticket itself as had the first conductor; the second was not bound to institute an inquiry and to determine either from plaintiff's statements or those of his fellow passengers that the passage had been a continuous one from Chicago, and that his claim as to a waiver was true. Nay more. Even though the first conductor himself had advised the second conductor as to the waiver, the latter was not bound to follow his conduct, which was contrary to the company's rules, and to accept a ticket after the time fixed for its use had expired.

In Pouilin v. Canadian Pacific Ry. Co., 52 Fed. 197, a case cited with approval in the Kiley case *supra,* in which two coupons from Detroit to Quebec were sold by mistake for a round trip ticket and the second was accepted on the return trip between Quebec and Montreal but rejected between Montreal and Detroit, the U. S. Circuit Court of Appeals, speaking by Taft, J., said at p. 202:

''The circumstance that one of defendant's conductors allowed the ticket to be used for passage from Quebec to Montreal does not aid plaintiff. The conductor simply did not follow the rules of the company, and thus saved the plaintiff the greater inconvenience of

having to leave the train before reaching Montreal. Even if the conductor did thereby mislead the plaintiff as to what subsequent conductors would do with the ticket, it was not to the plaintiff's disadvantage. As the conduct of the plaintiff in attempting to ride on a ticket which he knew did not purport to give him a right to do so, was, in our view, negligence, as matter of law, the fact that a conductor was negligent could not affect the proper standard of due care on the part of the passenger. Dietrich v. Railroad Co., 71 Pa. St. 432. It follows that there was no error in the charge of the court directing a verdict for the defendant, and that the judgment thereon must be affirmed.''

Inasmuch as in this case plaintiff had sufficient money to have paid his cash fare, and as such payment would have averted the expulsion and the consequent loss of time, his damages would be merely nominal even if the time regulation were deemed an illegal limitation.

In our opinion, however, the time limitation was a reasonable regulation, known to plaintiff, not waived by defendant, and the expulsion was not unlawful. While the plaintiff will be entitled to redemption of the unused part of his ticket, the court properly directed a verdict for defendant in this case.

*Affirmed.*