## E. E. Ellsworth v. The Chicago, Burlington & Quinoy Railway Company, Appellant.

**Railroads:** EJECTING PASSENGER. As between a person who buys an antedated ticket and the company, he is entitled to passage on the date of purchase under the provision thereon, allowing "continuous passage within one day of date of sale," and he may recover if ejected after its presentation, and may resist the ejection.

NONPAYMENT FOR TICKET. A person who gets a ticket on his promise to pay the agent therefor on his return, there not being time to pay before the starting of the train, and who thereafter makes such payment, is to be treated as a purchaser of a ticket, in an action for ejection from a train, when nonpayment is not the ground for refusing to honor the ticket.

WAIVER BY OFFERING FARE WITHOUT PENALTY. The fact that the passenger, though claiming his right to passage on his ticket, offered to pay the regular fare and refused to pay only the extra charges on the train, does not prevent his recovery for ejection, his offer not having been accepted.

*Appeal from Adams District Court.*—HON. H. M. TOWNER, Judge.

### TUESDAY, MAY 28, 1895.

On the morning of September 27, 1893, the plaintiff procured a ticket on defendant's line of road from Prescott to Corning, a distance of seven and one-third miles. Because of the fair at Corning, the company was selling round-trip tickets at reduced rates, which tickets had to be filled in with a pen. The plaintiff was late in reaching the depot at Prescott, so that there was no time to fill up a round-trip ticket, and he told the agent to give him a "straight ticket." The train was moving, and plaintiff took the ticket handed him, and caught the train, and got on to the rear platform. Because of his haste he did not pay for the ticket, but said to the agent he would pay on his return,

to which the agent assented.  By a rule of the company, tickets must be used on the day they are purchased, and, if not so used, they may be returned, and the purchase money will be refunded.   The ticket given plaintiff was dated September 24, 1893, instead of the 27th, the day on which it was handed to plaintiff. The delivery of the ticket to plaintiff was a mistake, it having before been sold, and not used, and then redeemed, as above stated.  The redemption was by the night agent at Prescott, who put it in the drawer in the ticket office, and the day agent, without noticing the date, gave it to plaintiff.   When a short distance from Prescott, the conductor asked for plaintiff's ticket, and the ticket in question was handed him, which, because of its date, he refused, and demanded the fare.   The regular fare to Corning is twenty-two cents, and by the rules of the company, authorized by the laws of the state, ten cents above the regular fare is collected by conductors when the ticket office has been open for a reasonable time before the departure of trains, and tickets are not secured.   After the refusal of the conductor to receive the ticket, plaintiff offered to pay the regular fare, but refused to pay the additional ten cents.   The train was stopped, and plaintiff ejected, and this action is for damages.   There was a verdict and judgment for the plaintiff, and the defendant appealed.—*Affirmed.*

*Smith McPherson* for appellant.

*Davis & Wells* for appellee.

Granger, J.—I.   The court gave the jury the following instruction:   "The ticket introduced in evidence, and which is admitted as the one purchased by plaintiff of defendant's agent, is dated September 24,

1893, and contains the following clause: 'Continuous passage within one day of date of sale.' You are instructed that said clause is a limitation of the time on which said ticket will be honored, and, as such, is a reasonable limitation and rule. You are further instructed that, presumptively, the date of the ticket was the day of its sale. But if, as a matter of fact, the day of the sale differs from the date of the ticket, yet the said ticket by its express terms was good from the date of sale, and you find from the evidence that said ticket was purchased by plaintiff on the 26th or 27th day of September, 1893, and was presented within one day from the actual date of such sale, it was good for such passage between the points named, to-wit, Prescott and Corning." The instruction is said to involve error because it treats the transaction between the agent and plaintiff as a sale of the ticket, when it appears that the ticket was not paid for on delivery, but it was paid for afterwards on the same day. On that branch of the case the court gave the following instruction: "In the case at bar it is admitted that plaintiff procured a ticket from the defendant's agent at Prescott before entering defendant's cars. It is also admitted that payment was not made until thereafter. On this branch of the case you are instructed that a neglect of plaintiff to pay for the same at that time, under the circumstances shown on the trial of this case, would not alone, or for that reason, invalidate the ticket; and an acceptance on the part of the agent of plaintiff's promise to pay therefor on his return, and a payment thereafter, constitute a valid consideration and payment therefor." It seems to us that that is the correct rule. Had there been a refusal to accept the ticket because not paid for, the question might be different. It is not what could be called a credit sale, nor was it intended as such, but only a delay in payment because there was not time to

pay and get the train, and payment was expected the same day, and so made.

II.   There is a further complaint of instruction No. 6 because, notwithstanding the clause, "continuous passage within one day of date of sale," it holds the ticket good if presented "within one day from the actual date of such sale." This contention means that the validity of the ticket for the passage depended upon its date rather than the fact as to the sale.   We cannot concur in that view.   It is not to be believed that the company ever intended to sell a ticket that should not be honored by a passage on the day of the actual sale.   It is true that the intent is, in such cases, to have the two dates concur, but no company or person would ever design that its mistake in such a way should be to the prejudice of a purchaser of a ticket.   It is not to be doubted that both the company and the plaintiff intended that the ticket in question should be good for a passage on the train on which it was offered.   The facts admit of no other conclusion.   It is equally true that the plaintiff was, as between himself and the company, entitled to passage on that train, and that his ejectment from it was wrongful.   The more difficult question is as to his remedy for the wrong done him; that is, when the conductor refused to accept the ticket because of its date, had the plaintiff the legal right to insist on a passage on that train, and resist removal therefrom, or should he have paid his fare, as demanded, and sought redress from the company on that basis, or, not wishing to do that, should he, on request of the conductor, to avoid damage, have left the train without resistance, and based his damage on the mistake in selling him the ticket?   Authorities on this question are far from being harmonious.   Other courts have, and this court should, in determining these questions, keep in mind

the difficulties to be met with and overcome in a successful management of the railway passenger traffic of the country, both as to the public and the carriers. To such an end it is clearly important that there shall be rules for the guidance of employes in the different parts of the service, and that such rules should be conclusive as to their course of conduct, even though at times the rule may operate to the prejudice of an individual passenger. We may instance a case or two as illustrative of it, as when a person who has purchased a ticket loses it. All will at once see that, although he has paid for the passage, he is not entitled to it on the lost ticket, because the only evidence to show the conductor that he has purchased a ticket is his word, and the confusion and consequences to result from such a system of management are too manifest to deserve comment. Take, also, a case in which a ticket is paid for, but no ticket handed to the passenger, through the neglect of the agent, and the passenger boards the train with no evidence of a right to a passage. The equitable status of the passenger in this case is somewhat stronger than in the other, but the importance of a rule of conduct for the conductor is equally strong. In such a case there is no harshness in the rule requiring him to seek his damage, if any, on the basis of a failure to deliver the ticket, and which excludes him from any rights on the train because of his payment for the ticket. It is safe to state, as a rule of passenger traffic, that no person has a right to passage on a train without paying fare, unless a ticket or other evidence of a right to transportation is presented to the conductor. This holding, at the outset, puts us to that extent in line with the authorities on the subject, a number of which are cited by appellant in support of its contention in this case. A case relied on by appellant is *Frederick v. Railroad Co.*, 37 Mich. 342. We have examined the case with care. In that case it was

claimed by plaintiff that he called and paid for a ticket from Ishpeming to Marquette, and, by mistake, the conductor gave him one to Morgan, an intermediate station. He rode to Morgan on the ticket, and, refusing to pay his fare to Marquette, he was ejected from the train, because of which he brought the action. In that case it will be seen that the passenger had no ticket from Morgan to Marquette, a fact known to him before reaching Morgan. The case in this respect is quite in line with the rule we announce, and, in this respect, unlike the case at bar. The opinion in that case deals somewhat elaborately with the importance of rules to guide conductors, and of the conclusiveness of the ticket as to his duty. In the opinion in that case it is said: "As between the conductor and passenger, the ticket must be the conclusive evidence of the extent of the passenger's right to travel. No other rule can protect the conductor in the performance of his duties, or enable him to determine what he may or may not lawfully do in managing the train or collecting fares." With the proposition we do not differ, for, as between the conductor and passenger, no other rule can well obtain, but that is not to say that a passenger may not have rights on a train that a conductor, observing his instructions, may not violate so that the company will be liable. The reasoning in that case would carry the effect of the rule further than we indicate our approval. It treats of the duties of passengers, even when entitled to a passage on a ticket, and the right is denied by a conductor, and when a wrong ticket is issued by mistake of the agent, so that he has not the ticket he should have, and it favors a yielding on the part of the passenger to the claims of the conductor in either case, and his seeking a remedy otherwise than for an ejectment from the train. The force of that case as an authority in the respects stated is much lessened, if not entirely lost, from the fact that, of the four judges,

two of them place their concurrence in an affirmance on a different ground, and it does not appear that the reasoning referred to is approved by them. In a later Michigan case, that of *Hufford v. Railway Co.*, 53 Mich. 118, 18 N. W. Rep. 580, the language of the *Frederick Case*, that we approve, is in substance stated and approved. In the latter case the ticket purchased was a part of an excursion ticket that had, in part at least, been canceled, and this was apparent on the face of the ticket. The agent, when shown the ticket by the purchaser, said it was good, but it really was not. In that case, to prevent ejectment from the train, the passenger paid the fare, and the action was for damages because the conductor laid his hand on him to put him off, and took hold of the bell rope to stop the train for that purpose. It is not necessary for us to say whether or not we concur in the holding in that case, for we understand that court to rest its holding on the apparent invalidity of the ticket on its face, it having been canceled. It is said in that opinion: "But we are all of the opinion that, if the plaintiff's ticket was apparently good, he had a right to refuse to leave the car."

That is what we regard as the situation in this case. Plaintiff's ticket was apparently good on its face. It should have entitled him to one first-class passage from Prescott to Corning. The fact rendering it not good was a rule of the company as to the time in which it could be used. These rules are changeable at the pleasure of the company, and when a ticket is purchased from one station to another, and on its face it indicates a right to that passage, no rule or regulation of the company should be permitted to defeat that right. A passenger has a right to assume that an agent placed at a station will observe the rules with reference to such matters as dates in or on a ticket. What may be the rule to-day may not be to-morrow. Conceding plaintiff to have known of the

rule previously, he was not called upon to question the act of the agent as to the rule on the day he bought the ticket.    It is neither reasonable nor practicable for passengers to take notice of such matters, or attempt to correct agents in regard to them.    With a ticket that expressed his right to a passage to Corning, he was not required to look behind it for the authority of the agent to issue it.    We do not understand that the supreme court of Michigan would apply the rule as to yielding to the directions of a conductor to a case like this, where the ticket is apparently good, but, even if otherwise, we cannot so hold. It would be doing too much in favor of a party in the wrong merely to subserve a public convenience, for which much is claimed.    A thought in argument is, and some language of the opinions referred to seems to favor it, that it is the duty of the passenger to not enhance damages by resistance, because it is of no use, but that he should submit quietly to ejectment, and then seek his damages.    To say the least, we think he may make any resistance, not amounting to a criminal disturbance of the peace, as was done in this case, and that he is not called upon to submit to a wrongful ejection for the purpose of economizing the damages to be recovered.    *Townsend v. Railway Co.*, 56 N. Y. 295, is another case cited and relied upon by appellant.    In that case the passenger had surrendered his ticket to a conductor on another train.    He changed trains, as was necessary, to reach his destination, but he had no evidence whatever of a right to a passage on that train.    He claimed to the conductor that he had purchased a through ticket, and that the other conductor had taken it, and not given it back.    For a refusal to pay, he was ejected, and a recovery had in the lower court.    The case was reversed on two grounds, the latter ground being the part of the opinion relied on by

appellant. The rule of the case is that the remedy was an action for the wrongful act of the first conductor in taking his ticket; that the act of the first conductor did not justify the violation of the lawful regulations of another train; that he should. have left the train without resistance, and if he invited force, by resistance, the company was not liable for it. The rule is not against our conclusions. The conductor was right in refusing the passage without a ticket. In such a case the passenger must pay or leave the train. If he does not he is in the wrong. But even in that case two of the judges based their concurrence on the first ground, and one on the last.

The case of *Hufford v. Railway Co.*, cited above, was appealed a second time and is reported in 64 Mich. 631, 31 N. W. Rep. 544. It will be remembered that it is the case where the canceled ticket was sold and refused by the conductor. As bearing upon the effect of such a ticket when presented this language is used: "The ticket given by the agent to the plaintiff was the evidence agreed upon by the parties, by which the defendant should thereafter recognize the rights of the plaintiff in his contract; and neither the company, nor any of its agents, could thereafter be permitted to say that the ticket was not such evidence, and conclusive upon the subject. Passengers are not interested in the internal affairs of the companies whose coaches they ride in, nor are they required to know the rules and regulations made by the directors of a company for the control of the actions of its agents and the management of its affairs." The case holds that even the canceled ticket, because issued for a passage, was good and conclusive. In *Railway Co. v. Dougherty*, 86 Ga. 744, 12 S. E. Rep. 747, which was an action by a colored woman for being ejected from a train, there was a mistake, her ticket being to Asheville, N. C., instead of Atlanta, Ga., as she supposed. In the opinion it is

said: "We think she had a right to rely on the ticket she had purchased from the agent of the railroad company as being a proper one, without an examination of the same; and, nothing else appearing, there being no intervening circumstances which required her to look at the ticket, if she could have read the same, such conduct upon the part of the railroad company and its agents authorized her to recover damages. See *Railroad Co. v. Olds*, 77 Ga. 673; *Railroad Co. v. Winter's Adm'r*, 143 U. S. 60, 12 Sup. Ct. Rep. 356; *Railway Co. v. Fix*, 88 Ind. 381; *Railway Co. v. Holdridge*, 118 Ind. 281, 20 N. E. Rep. 837; *Railroad Co. v. Rice*, 64 Md. 63, 21 Atl. Rep. 97; *Murdock v. Railroad Co.*, 137 Mass. 293; *Burnham v. Railway Co.*, 63 Me. 298.

Some importance is attached to the fact that the plaintiff acquiesced in the demand of the conductor by offering to pay the regular fare, and only objected to the extra ten cents, but we do not see how that makes a difference as to his right of recovery.

It is not to be questioned but that he claimed his right to a passage on the ticket, and made the offer to avoid ejectment from the train. As he had a ticket, he felt that he should not be called upon to pay a penalty for a neglect of which he was not guilty. We cannot see how an offer to pay that was not accepted could excuse his ejectment from a train on which he was entitled to be.

The court authorized the jury to find exemplary damages, if it found that the act of defendant was malicious. Complaint is made of the instruction under the evidence, but it was warranted. There was evidence of the previous bad feeling and threats which, with what was done at the time of the ejectment, made the question one for the jury. The judgment is *affirmed.*