## V. M. DORSETT v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 1 November, 1911.)

**1. Carriers of Passengers—Mileage Book—Exchange for Tickets— Wrongful Refusal—Ejection from Train—Damages.**

When the owner of a mileage book has properly requested the carrier's agent for a ticket in exchange for his mileage, to which he was entitled under the rules of the company, and has been refused by the agent, it is incumbent upon the conductor of the carrier to take the mileage on the train for his transportation; and the ejection of the passenger by the conductor because the former did not have the ticket and, after explanation, had insisted on his taking the mileage to destination, subjects the carrier to the payment of the damages sustained in consequence.

**2. Carriers of Passengers—Mileage Exchanged—Wrongful Refusal —Intermediate Point—Consent—Evidence.**

When the owner of the carrier's mileage book has requested under the rules of the company a ticket to his destination in exchange for his mileage, and has been refused by the agent an exchange except to an intermediate point, and then requested, with the same result, a ticket to a further point towards his destination, it is competent to show that he had not consented to the agent's giving him the ticket to the intermediate point as evidence that he had not withdrawn his request for the ticket to the point beyond.

**3. Evidence—Rebuttal—Examination on Matters Already Testified —Appeal and Error.**

Examination of a witness in rebuttal upon evidence he has already gone over in his original examination, while irregular, does not constitute reversible error on appeal.

**4. Carriers of Passengers—Mileage Exchanged—Refusal—Ejection of Passenger—Punitive Damages.**

The wrongful ejection of the plaintiff, a passenger on defendant's train, by the conductor, porter, and baggagemaster, in a very rough manner, with anger and violence, because he insisted upon the conductor's taking his mileage for his transportation, as under the circumstances he had a right to do, justifies a charge to the jury that in their discretion they might, if they saw fit, award punitive as well as compensatory damages.

CLARK, C. J., concurring.

DORSETT *v.* R. R.

APPEAL from *O. H. Allen, J.,* at June Term, 1911, of LEE.

The action was brought to recover damages for unlawful ejection from defendant's train. Appropriate issues were submitted to which there is no exception.

There was a verdict and judgment for plaintiff, from which defendant appealed.

*A. A. F. Seawell and D. E. McIver for plaintiff.*
*Rose & Rose for defendant.*

BROWN, J. The evidence of the plaintiff tends to prove that on 30 October, 1909, he presented his mileage book issued by defendant to its agent at Red Springs in due time before arrival of its train for Fayetteville and demanded a ticket for Siler City, N. C. This being refused, he demanded ticket to Sanford, N. C., which was likewise refused. The agent stated he had no time, and gave plaintiff a ticket to Fayetteville. It is necessary to change cars at Fayetteville for Sanford and Siler City.

While plaintiff was alighting from train at Fayetteville he saw Conductor McCulloch of the train from Fayetteville to Sanford, and asked him if he, plaintiff, had time to get a ticket; he was told by the conductor that he did not have time, and the train left immediately. Train was in motion by the time plaintiff could get to his seat. Conductor McCulloch demanded a ticket of plaintiff. Plaintiff tendered his mileage coupons, explaining the circumstances stated above, which the conductor refused. The conductor, aided by his porter and baggagemaster, by force, in a very rough manner and with anger and violence, ejected plaintiff from defendant's train.

There was evidence offered by defendant contradicting, qualifying, and explaining the plaintiff's evidence which it is unnecessary to set out.

The three assignments of error relating to the evidence cannot be sustained.

It was permissible to ask plaintiff whether he consented to the agent giving him a ticket to Fayetteville in order to show that plaintiff had not voluntarily withdrawn his application for a ticket to Sanford.

Allowing the plaintiff to be examined in rebuttal upon evidence already gone over in his original examination, while irregular, does not constitute reversible error.

The remaining assignments of error relate to the charge and to refusal to give certain instructions, which it is unnecessary to set out here.

The propositions of law chiefly urged by the learned counsel for defendant are settled in *Harvey v. R. R.,* 153 N. C., 568.

It is decided in that case that a mileage book is a contract for carriage, subject to certain restrictive regulations; that the owner is compelled under the terms of the contract to present it at the ticket office in reasonable time, and, when he does so, that he is entitled to receive a ticket in exchange for his mileage strip.

If the traveler fails to do this, he has no right to have the book accepted for transportation on the train. When he complies with the contract on his part and the carrier fails to give him the requisite ticket in exchange, the carrier is at fault and may not lawfully refuse to honor the mileage contract on the train, and cannot rightfully eject him. The plaintiff, according to all the evidence, complied with the contract on his part. He waived his right to a ticket to Siler City, but not to Sanford. It was defendant's duty to furnish plaintiff a ticket to Sanford in exchange for his mileage, which he had bought and paid for. The plaintiff, according to the evidence, had no time to present his book at Fayetteville, even if that was necessary, which we do not admit, as plaintiff had already presented it at Red Springs.

If the railway companies insist upon the traveler presenting his book at the ticket window, they must be prepared to honor it there. If they fail to do so, they should instruct their conductors to honor it on the train. This will prevent much friction and will doubtless save the railway companies from much litigation and expense.

In the *Harvey case* it was admitted that there was no foundation for punitive damages, and two members of this Court thought the verdict rendered grossly excessive and that it

DORSETT *v.* R. R.

should have been set aside for that reason. But in this case the plaintiff offers evidence which fully justified the court in instructing the jury that in their discretion they might, if they saw fit, award punitive as well as compensatory damages.

We think the charge of the court is a full presentation of the contentions' of both parties and is free from error.

No error.

CLARK, C. J., concurring: In *Harvey v. R. R.*, 153 N. C., 567, the Court did not find it necessary to pass upon the validity of the requirement that the holder of a mileage book shall present it and obtain a ticket thereon, but, passing by that question, as in this case, held that the plaintiff was entitled to recover. 153 N. C., at p. 577.

I am of opinion that in any aspect the plaintiff is entitled to recover, for that such requirement is an unreasonable regulation and therefore void, for at least four reasons:

1. Down to the enactment of the statute by which the General Assembly of 1908 prescribed 2½ cents per mile as a maximum legal rate for transportation over the railroads of this State, such requirement had never been heard of in North Carolina. It is therefore not necessary, and hence unreasonable.

2. Throughout the Union, except practically in this and two or three other adjoining States, such requirement is still unheard of, and mileage is still pulled on the trains as was the case here prior to 1908. See table, 153 N. C., at p. 580. Therefore it cannot be necessary in this State where the volume of travel is much smaller than in many others, and hence it is unreasonable to vex the public by an unnecessary requirement.

3. By chapter 216, Laws 1907, the General Assembly prescribed 2¼ cents per mile as a maximum legal rate for transportation over the railroads in this State. The railroad companies proposed to the Executive of this State that "if the rate were changed to 2½ cents per mile they would issue mileage books, good on their lines within and without the State and good on all railroads within the State, at the rate of 2 cents per mile." Thereupon, the Special Session of 1908 was called,

which enacted the 2½ cents per mile rate. This session was held at considerable expense to the taxpayers of the State. No one in this State had ever heard of a requirement that mileage books be exchanged for a ticket. Every one understood, of course, that the mileage books issued would be such as the public had always been accustomed to. That mileage had saved the public the annoyance which it now daily suffers of being compelled to purchase tickets. The requirement to buy tickets with mileage was adopted after the General Assembly had adjourned. It was a breach of faith and hence unnecessary and void. It is vexatious and annoying to the traveling public.

4. This hitherto unheard-of requirement that mileage should be used, not as mileage, but to buy tickets with, was doubtless adopted to deter the public from the purchase of mileage books by making their use less of a convenience. For that reason, also, it should be held void, for travel should be made as convenient as possible for the traveling public. The great "Pennsylvania System" as well as some other roads finds it an economy and a convenience to themselves as well as to the public to allow mileage books to be used on the train, not only by the holder, but for any one else who may be with him. . It is certainly less expensive to the railroad company to have an agent, other than the conductor, to take up mileage on the train than to have extra agents at the stations to exchange tickets for mileage. In this State the Raleigh and Southport, and possibly some other roads, still accept mileage on their trains. This is another evidence that the innovation of requiring the public to buy tickets with mileage is unnecessary and a vexatious imposition upon the public.