H. L. HALLMAN v. SOUTHERN RAILWAY COMPANY.

(Filed 19 May, 1915.)

1. **Carriers of Passengers—Shortest Route—Ejection of Passenger—Passenger Misled.**

   Where a passenger on a railroad train buys a mileage book, exchanges his mileage for a ticket to his destination upon the assurance of the local agent that the train would make connection at a certain junction en route the shortest distance, but, if not, his ticket would carry him by another connection over a longer route, which latter he attempts to take upon failure of the promised connection, and he is ejected from the train upon his refusal to pay the difference in money for the longer distance, after the defendant's conductor had been informed of the circumstances, it is held that the ejection was wrongful, notwithstanding the ticket read that the journey was to be made by the shortest route.

2. **Same — Contracts — Issues — Instructions—Appeal and Error—Harmless Error.**

   Where a passenger is misled in buying a ticket to his destination by the assurance of the local ticket agent of a railroad company into believing that he could go by a certain route, when his ticket specified by another and shorter one, and in consequence, upon refusing to pay upon the train the difference in the mileage in money, he is ejected from the train, and in addition to a favorable finding upon this issue the jury have found that the local agent had contracted with the plaintiff that he could take the longer route if he failed to make connection on the shorter one, but from the other issues, under a correct instruction, it appears that the case turned solely upon the question of the plaintiff having been misled, the questions of the authority of the local agent to make the contract, or of unlawful discrimination, become immaterial, and will not be held for reversible error.

3. **Trials—Improper Arguments—Error Corrected—Appeal and Error—Harmless Error.**

   Improper arguments by counsel to the jury will not be regarded as reversible error when it appears that upon objection the trial judge stopped the argument and withdrew the matter from the consideration of the jury in unmistakable terms.

APPEAL by both parties from *Long, J.,* at November Term, 1914, of CATAWBA.

Action to recover damages, the plaintiff alleging that he bought a ticket from the agent of the defendant at Hickory on 18 August, 1913, for Winston-Salem by Barber's Junction, and that the agent guaranteed the connection at said junction; that he failed to make said connection, and after leaving said junction was wrongfully ejected from the train.

These allegations were denied by the defendant.

The plaintiff offered evidence tending to prove that on 18 August, 1913, he went to the office of the defendant at Hickory and told the agent of the defendant that he wanted a mileage book if he could make the connection at Barber's Junction, and if not, he would not buy one on that day; that the agent assured him that he would make the connection

at Barber's Junction, and he then bought the mileage book, 86 miles of which was exchanged for a ticket from Hickory to Winston-Salem by Barber's Junction; that in a short time he noticed that the train to leave Hickory was marked late, and he then returned to the ticket office and asked the agent if he was sure the connection would be made; that the agent assured him that he would make the connection at Barber's Junction, but that if he failed to do so, he could go to Winston-Salem the longer route, by Greensboro, on the same ticket; that he would guarantee the connection; that he relied upon this assurance of the agent and entered the train of the defendant; that when the conductor on the train took up his ticket he asked the conductor if the connection would be made at Barber's Junction, and was assured that it would be; that when within about 2 miles of Barber's Junction the conductor told him that the train which he expected to take at that point had gone, and that he, the plaintiff, would have to go round by Greensboro to get to Winston; that he relied upon the assurance of the agent that he could go to Winston-Salem by Greensboro on the ticket he had bought, and procured no other ticket; that as the train was leaving Barber's Junction for Greensboro the conductor came to him and demanded 55 cents, the difference in fare in the two routes to Winston-Salem; that he then told the conductor of the assurance of the agent at Hickory that if he failed to make his connection at Barber's Junction he could go by Greensboro on the same ticket; that he tendered to the conductor his mileage book and asked him to take out the additional miles, which he refused to do; that he requested the conductor to permit him to go back to the office at Barber's Junction and have mileage taken for the difference in the two routes, or that he permit him to have the extra mileage taken by the agent at Salisbury; that these offers were refused, and he then tendered to the conductor his whole mileage of 914 miles, which was refused; that the conductor thereupon ejected the plaintiff from his train on account of his refusal to pay the extra fare of 55 cents.

There was evidence on the part of the defendant contradicting the evidence of the plaintiff.

The defendant objected to the evidence offered by the plaintiff, tending to prove that the agent at Hickory guaranteed the connection at Barber's Junction, insisting that the agent had no authority to make such a contract, and that the contract, if made, was invalid because a discrimination.

The jury returned the following verdict:

1. Did defendant's ticket agent at Hickory, North Carolina, enter into a contract with the plaintiff in behalf of the defendant, guaranteeing a connection at Barber's Junction for Winston-Salem?  Answer: "Yes."

2. Did the defendant wrongfully eject plaintiff from the train at Barber, as alleged?   Answer: "Yes."

3. Did the defendant assault the plaintiff by pushing him from the steps, as alleged in the complaint? Answer: "No."

4. What damage, if any, is plaintiff entitled to recover? Answer: "$400."

There was a judgment in favor of the plaintiff, and the defendant appealed.

*A. A. Whitener* for plaintiff.
*S. J. Ervin* for defendant.

ALLEN, J. There is authority sustaining the contention of the plaintiff, that an agent of a common carrier, authorized to sell tickets, has an implied authority to guarantee connection (*Foster v. R. R.,* 56 Fla., 435; *Hayes v. R. R.,* 31 L. R. A. (N. S.), 229), and also authority in support of the position. of the defendant that a contract of this character is unlawful because it does not afford equal opportunities and advantages to all of the patrons of the common carrier (*R. R. v. Kirby,* 225 U. S., 155); but it is not necessary for us to pass upon these questions, as in our opinion no error was committed in the trial of the second issue, and the jury was not permitted to consider any element of damage under the fourth issue, which the plaintiff would not have been entitled to recover on account of being wrongfully ejected from the train, and the findings upon these two issues are sufficient to support the judgment.

The finding upon the first issue, therefore, has no materiality except as it may tend to show that the jury accepted the plaintiff's version of the occurrence at Hickory; but this sufficiently appears from the finding upon the second issue, when read in connection with the charge.

His Honor, among other things, charged the jury upon this issue as follows: "The plaintiff contends that he made inquiry of Mr. Miller as to whether the passenger train No. 22 made connection at Barber's Junction with the train running from Charlotte by way of Barber's Junction to Winston-Salem, and he contends that in this inquiry Mr. Miller told him that he would make connection at Barber's Junction; he contends and alleges that he relied upon the assurance given him by Mr. Miller, and, after buying a mileage book, that the book was pulled from Hickory to Winston and that he received a ticket from Hickory to Winston-Salem in exchange for the mileage that he pulled; and he alleges and contends that some time after that Mr. Miller stated to him he would guarantee he would make connection at Barber's Junction on this train, No. 22, and that, relying upon this assurance, he boarded train No. 22 when it came to Hickory and became a passenger thereon; and he contends that when the train reached a point a few miles from Barber's Junction that the agent of the defendant, the ticket collector, gave him information that he would not make his connection at Barber's Junction for Winston

and that he would be required to pay the sum of 55 cents in cash in order to continue his journey by way of Salisbury and Greensboro to reach Winston; and he contends that when this was called to his attention by the auditor, that he informed him of what had happened between himself and Mr. Miller at Hickory, and that after his talk with the conductor and the ticket collector they still insisted he would have to pay 55 cents in order to continue his journey. He contends, also, that after making known to them what had occurred between himself and Mr. Miller, and after they made demand upon him that he pay 55 cents in cash, that he informed the auditor and conductor, one or both, that he was willing to let them have a sufficient number of miles off of his mileage book with which to make the sum demanded of him, towit, 55 cents; he also contends that in his interview he offered to let his book be pulled to Barber's Junction in order to make up this 55 cents; also that he made an offer that if they would let him ride to Salisbury, his mileage book might be used there so that enough could be pulled from the book to make up the 55 cents; but he says these offers made by him to use the book and take the mileage off of it instead of cash were refused by the conductor and ticket collector, and he insists you ought to find from the evidence also that under these circumstances, when he got to Barber, the train not being there for him to go on the short route, that they should not have put him off the train, but allowed him to go on, under the circumstances, by way of Salisbury and Greensboro, he insisting that if there was not actually a contract between himself and the agent, Mr. Miller, at Hickory, except as was understood by both him and Miller, nevertheless that he was misinformed and misdirected, and the conditions at Barber were erroneously represented to him by Mr. Miller, and therefore that he should not have been held to the exact terms of the contract as expressed on the ticket and put off the train. He, therefore, insists that he was wrongfully put off the train and that you should answer the second issue 'Yes.'

"If the plaintiff has satisfied you by the greater weight of the evidence that his contentions to which I have called your attention are true, and that although this ticket was issued having upon it the terms that it does, that it was good for transportation by way of the short route, that is to say, by way of Barber, and if you further find that he was actually misled at the time Mr. Miller issued the ticket to him by the erroneous representation, misdirection, or mistake of Mr. Miller at that time, that is to say, the time he boarded the train, and that thereby he was caused to become a passenger on the train; and if you further find that the plaintiff was not advised or informed as to the connection of this train at Barber otherwise, or could not have been, in the exercise of reasonable care, and you further find that the plaintiff, while he was on the train and when the extra amount of 55 cents was demanded of him, informed

the conductor and the collector, one or both, of what had occurred between himself and the agent, Mr. Miller, at Hickory; and if you further find that the plaintiff then, under those circumstances, after making that explanation and offering to pay the 55 cents extra from his mileage book by the pulling of coupons therefrom at Barber or at Salisbury or on the train, and you find that the conductor would not allow him to do this; if all these facts are found by you as contended by the plaintiff, and by the greater weight of the evidence, then the court instructs you that the conductor would not have been authorized, as the court understands the law, to have put him off the train." ˚

This part of the charge is fully supported by *Mace v. R. R.*, 151 N. C., 404; *Harvey v. R. R.*, 153 N. C., 567; *Dorsett v. R. R.*, 156 N. C., 439; *Norman v. R. R.*, 161 N. C., 330.

In the *Mace case* the following instruction to the jury was approved: "If you find from the evidence that the ticket that has been introduced in evidence is a copy of the tickets which were issued to the plaintiff, and contained the stipulation, 'via the short route and return the same way,' then the plaintiffs would be bound by that, and they would have to go the shortest route and return the same way, unless the agent who sold them the tickets at Rock Hill told them that they were good by way of Marion as well as by way of Statesville and Charlotte; if the agent told them that, and the plaintiffs did not know which was the shortest route, and could not by reasonable diligence have ascertained that, then they had a right to rely upon the statement made to them by the agent at Rock Hill, and if, under these circumstances, they went to Hickory, and, in order to ascertain whether they could go on the train to Marion, applied to the agent at Hickory, and he confirmed the statement that was made by the agent at Rock Hill by telling them that they could go back by Marion, then they had a right to rely upon the statement of the two agents, and to return by way of Marion; and if they were ejected from the train after offering that ticket and informing the conductor, then they were wrongfully put off the train, and the defendant would be liable in actual damages, it makes no difference whether the ejectment was with or without rudeness, with malice or without, or wanton or not wanton"; and the facts here are stronger in behalf of the plaintiff, because, after relying upon the statements of the agent, he tendered his mileage book and asked the conductor to take out the extra mileage, which was not done in the *Mace case.*

In the *Harvey case, Justice Hoke,* speaking for the Court, says: "It follows that where by the wrong and fault of the company a lawful holder of a mileage book is prevented from making the exchange required, such holder is relieved of the conditions and his book becomes a complete contract of carriage, unaffected by the restrictions referred to"; and in the *Norman case* the Court, commenting upon the cases previ-

ously decided, says: "The principle upon which *Mace v. R. R.,* 151 N. C., 404; *Harvey v. R. R.,* 153 N. C., 567; and *Dorsett v. R. R.,* 156 N. C., 439, were decided is the same, as in each the railroad was held liable in damages for expelling a passenger, brought about by the mistake of the agent, although the conductor was obeying a rule of the company."

If, therefore, proper instructions were given to the jury upon the second issue, and there is no reason for disturbing the finding upon that issue, and if the answer to that issue alone is sufficient to justify the assessment of damages, we are not called upon to decide the interesting questions discussed in the brief of the appellant unless some element of damage was considered by the jury which was only applicable to the first issue; and when we turn to the charge upon damages, we find that the only matters which the jury was permitted to consider was loss of time, an extra hotel bill, and humiliation, all of which ought to have been taken into consideration by the jury if the first issue had not been presented or considered.

There are three exceptions taken by the defendant to parts of the argument before the jury, but none of them can be sustained, because it appears from the statement of the case that as soon as objection was made, his Honor stopped the argument and withdrew the matter from the consideration of the jury in terms that could not be misunderstood.

We find

No error.